IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FARM JOURNAL, INC. d/b/a ) <br> FARM JOURNAL MEDIA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GREGORY JOHNSON and ) <br> BLUE BOOK SERVICES, INC. d/b/a ) <br> PRODUCE BLUE BOOK, ) <br> ) <br> Defendants. | Case No. 4:19-cv-00095-SRB |

**ORDER**

Before the Court is Defendant Gregory Johnson's Motion to Dismiss (Doc. #26) and Defendant Blue Book Services, Inc. d/b/a Produce Blue Book's Motion to Dismiss (Doc. #27). For reasons discussed below the motions are denied.

**I.  Legal Standard**

Defendants Gregory Johnson ("Johnson") and Blue Book Services, Inc. d/b/a Produce Blue Book ("Blue Book") filed the present motions to dismiss Plaintiff Farm Journal, Inc. d/b/a Farm Journal Media's ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(6), which allows courts to dismiss a claim for "failure to state a claim upon which relief can be granted."  To survive this kind of motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, allegations that are "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677).

## II.     Background

Plaintiff's Complaint alleges the following facts, which the Court accepts as true for purposes of Defendant Johnson's and Blue Book's motions to dismiss. *See Data Mfg., Inc.*, 557 F.3d at 851. Plaintiff is an "agricultural media company" that produces "a variety of respected publications" and is "a trusted source for agricultural information and news." (Doc. #1, ¶¶ 11–12). Defendant Johnson is a former employee of Plaintiff who served as editorial director for two of Plaintiff's publications: *The Packer* and *Produce Retailer*. (Doc. #1, ¶¶ 14–15). Defendant Johnson is a current employee of Defendant Blue Book, "another agricultural media company and [Plaintiff's] direct competitor." (Doc. #1, ¶¶ 2, 31). This lawsuit is about Defendant Johnson's alleged conduct during his employment transition from Plaintiff to Defendant Blue Book.

While working for Plaintiff, Defendant Johnson's employment responsibilities included handling Plaintiff's confidential information. To adequately perform his job, Defendant Johnson had "access to a substantial volume of [Plaintiff's] confidential, proprietary, and/or trade secret

documents, files and information stored on its internal computer network," which "included, but was not limited to, market and industry research data, customer lists and information, pricing and financial information, information regarding advertisers, marketing strategies, competitive analysis, and information regarding new products and services under development." (Doc. #1, ¶ 17). When Defendant Johnson accepted Plaintiff's employment offer on December 2, 2015, he "agreed in the offer letter he signed" ("offer letter") not to disclose or use Plaintiff's confidential information "except in furtherance of" Plaintiff's business. (Doc. #1, ¶ 27). Plaintiff requires all new employees to sign such an agreement. (Doc. #1, ¶ 21). Another "integral part" of Defendant Johnson's work responsibilities was to "routinely update[] *The Packer*'s Twitter account with posts and links to [Plaintiff's] content as part of the company's overall marketing strategy to build its profile and the visibility of its publications." (Doc. #1, ¶ 30).

"[A]s early as March of 2018, [Defendant] Johnson entered into discussions with" Defendant Blue Book's President and CEO "about the potential for [Defendant] Johnson to leave his job at [Plaintiff] and join [Defendant] Blue Book." (Doc. #1, ¶ 32). On July 7, 2018, Defendant Blue Book "formally offered to [Defendant] Johnson a position as its new Director of Media Development," which Defendant Johnson soon accepted. (Doc. #1, ¶ 37). On July 16, 2018, Defendant Johnson gave Plaintiff his resignation letter and two-weeks' notice. (Doc. #1, ¶ 38). While Plaintiff paid Defendant Johnson his salary through the end of July 2018, Plaintiff relieved Defendant Johnson of his work responsibilities on July 17, 2018. (Doc. #1, ¶ 41). The next day, Defendant Johnson and his wife returned to Plaintiff's office one last time "to collect some personal items and return his company cell phone." (Doc. #1, ¶ 44).

Shortly after July 19, 2018, Plaintiff "discovered that [Defendant] Johnson deliberately changed the 'handle' of *The Packer*'s Twitter account from '@gregofthepacker' to

'@gregofthebluebook'" and thereby "redirect[ed]" Plaintiff's "followers to Blue Book content." (Doc. #1, ¶¶ 47, 115). Plaintiff also "obtained a forensic image of the hard drive of [Defendant Johnson's] company laptop computer." (Doc. #1, ¶ 51). The forensic image revealed that on June 11, 2018,—after Defendant Johnson had begun employment discussions with Defendant Blue Book but before he stopped working for Plaintiff—Defendant Johnson "surreptitiously copied more than 11,000 files from [Plaintiff's] internal computer network to a personal 'Dropbox' account" without Plaintiff's knowledge or permission. (Doc. #1, ¶ 52) (emphasis omitted). The forensic image also showed that Defendant Johnson "attached a USB storage device to his [company] laptop," though Plaintiff "cannot determine what additional information [Defendant] Johnson may have copied to this USB storage device because [Plaintiff] does not have the USB storage device despite repeated requests for the same." (Doc. #1, ¶ 53).

In November and December 2018, Plaintiff sent letters to Defendants Johnson and Blue Book informing them of what Plaintiff had learned since Defendant Johnson's departure and demanding their cooperation in returning Plaintiff's property. (Doc. #1, ¶¶ 57, 59). Defendant Johnson "never substantively responded to any of [Plaintiff's] letters," and Defendant Blue Book "largely declined to meet any of [Plaintiff's] demands." (Doc. #1, ¶¶ 72, 75–76). Plaintiff then filed this lawsuit. (Doc. #1, ¶ 76). Plaintiff brings Counts I–V against Defendant Johnson only. Plaintiff brings Counts VI–IX against Defendants Johnson and Blue Book.

### III. Discussion

#### A. Count I: Violation of DTSA

In Count I, Plaintiff alleges Defendant Johnson "misappropriated [Plaintiff's] trade secrets by intentionally and willfully copying, without [Plaintiff's] authorization, more than 11,000 files" to his personal DropBox account in violation of the Defend Trade Secrets Act

("DTSA"), 18 U.S.C. § 1836, et seq. (Doc. #1, ¶¶ 78, 82). "The DTSA creates a private right of action for an owner of a trade secret when that secret has been misappropriated, if the secret relates to a product used in interstate commerce." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 18-1075, 2019 WL 1474022, at *2 (8th Cir. Apr. 4, 2019) (citing 18 U.S.C. § 1836). The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information" as long as 1) "the owner thereof has taken reasonable measures to keep such information secret" and 2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." § 1839(3)(A)–(B). "Misappropriation" under the DTSA means, among other things, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret." § 1839(5)(B). "[I]mproper means" for DTSA purposes "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" but "does not include reverse engineering, independent derivation, or any other lawful means of acquisition." § 1839(6)(A).

Defendant Johnson argues that Plaintiff makes only conclusory allegations that the uploaded files contained trade secrets and that, because the offer letter's confidentiality provision did not include a survival clause, the offer letter "expressly permitted" him to cease maintaining the confidentiality of Plaintiff's information once his employment ended. (Doc. #28, pp. 13–15). Defendant Johnson further argues that because he owed Plaintiff no confidentiality obligation at the moment his employment with Plaintiff ended, Plaintiff's information lost its trade secret status and Plaintiff's DTSA claim fails as a matter of law. (Doc. #28, pp. 12–13) (citing

5

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1006–1007) (1984)). Plaintiff argues that "[t]here is nothing in the confidentiality provision suggesting it terminates with [Defendant] Johnson's employment," that Defendant Johnson "stole [Plaintiff's] confidential information *while he was still employed*," and that it "specifically pled that the files Johnson stole included trade secrets." (Doc. #17, pp. 14–17) (emphasis in original).

Here, Plaintiff states a DTSA claim. Plaintiff's Complaint contains many allegations that the 11,000+ uploaded files contained trade secrets. Plaintiff alleges that it has taken reasonable measures to maintain the secrecy of this information, (Doc. #1, ¶¶ 17-29, 80), which derives independent economic value from not being generally known to Plaintiff's competitors. (Doc. #1, ¶¶ 17-18, 80, 79, 89). Defendant Johnson's conduct, as alleged by Plaintiff, shows the use of improper means—either theft or a breach of a duty to maintain secrecy—to misappropriate those files by using them or disclosing them. (Doc. #1, ¶¶ 82-84). Defendant Johnson's motion to dismiss Count I is denied.

### B. Count II: Violation of KUTSA

In Count II, Plaintiff alleges that this same conduct by Defendant Johnson also violates the Kansas Uniform Trade Secrets Act ("KUTSA"), Kan. Stat. Ann. § 60-3320, et seq., because Defendant Johnson "stole the trade secrets while working for [Plaintiff] in its Lenexa, Kansas[,] office and he uploaded them from [Plaintiff's] computer server that is located in that office." (Doc. #1, ¶ 88). To prevail on a claim under the KUTSA, a plaintiff must show 1) "that the defendants employed theft or breached a duty to maintain secrecy in order to acquire trade secrets that had an independent economic value," 2) that "these secrets were not readily ascertainable by proper means by the defendants," and 3) "that [the plaintiff] made reasonable efforts under the circumstances to maintain the secrecy of the trade secrets." *Progressive Prod.,*

*Inc. v. Swartz*, 258 P.3d 969, 976 (Kan. 2011) ("[T]he act tells us that it seeks uniformity with other jurisdictions that have adopted the Uniform Trade Secrets Act."). The KUTSA's definitions of "trade secret," "misappropriation," and "improper means" are similar to those of the DTSA. *See* Kan. Stat. Ann. § 60-3320(1)–(2), (4). Defendant Johnson and Plaintiff direct their DTSA arguments to Plaintiff's KUTSA claim as well. Here, Plaintiff states a KUTSA claim for the same reasons he states a DTSA claim. Defendant Johnson's motion to dismiss Count II is denied.

### C. Count III: Breach of Contract

In Count III, Plaintiff alleges that the December 2015 offer letter Defendant Johnson signed is an enforceable contract and that Defendant Johnson breached the confidentiality provisions in that contract. (Doc. #1, ¶¶ 97, 100). "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by defendant; and (4) damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010) (citing *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. Ct. App. 1997)). Under Missouri law, confidentiality agreements need not "contain time and geographic limitations to be valid" and enforceable. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 959 (8th Cir. 2007). "[C]ontract interpretation is a question of law." *Webbe v. Keel*, 369 S.W.3d 755, 756 (Mo. Ct. App. 2012) (citing *Newco Atlas, Inc. v. Park Range Constr., Inc.,* 272 S.W.3d 886, 891 (Mo. Ct. App. 2008)).

Defendant Johnson argues that any duty of confidentiality he owed to Plaintiff as a condition of his employment "terminated" on July 17, 2018, because "by its terms, the Offer Letter obligated Mr. Johnson to maintain confidentiality only as long as the Offer Letter was in

7

effect—it does not contain any provision stating that the confidentiality obligations survives the termination of the agreement." (Doc. #28, p. 13) (citing Doc. #28-2, p. 2). Plaintiff argues that Defendant Johnson's duty of confidentiality survived the termination of his employment with Plaintiff and that, even if it did not, Defendant Johnson "stole [Plaintiff's] confidential information *while he was still employed*." (Doc. #33, p. 17) (emphasis in original). Defendant Johnson replies that "[Plaintiff] cannot recover for pre-termination breaches" because Plaintiff "cites no authority that the Court can retroactively revive previously terminated confidentiality obligations." (Doc. #42, p. 8).

Here, Plaintiff's Complaint states a claim for breach of contract. The disputed contractual provision states that "[a]s a condition of employment, you agree to receive, develop and hold all Company confidential information in strict confidence and not to use or disclose confidential information, or make copies of any documents containing confidential information, except in furtherance of the business of the Company, without prior written approval." (Doc. #1, ¶ 27). Plaintiff alleges that on June 11, 2018, while he still worked for Plaintiff, Defendant Johnson "secretly copied" over 11,000 files "from [Plaintiff's] network" onto his own DropBox account "while he was negotiating his future employment with [Defendant Blue Book] and sharing business ideas with it." (Doc. #1, ¶¶ 52, 94). Plaintiff further alleges that Defendant Johnson did so "without [Plaintiff's] written approval" and that Plaintiff suffered damages as a result. (Doc. #1, ¶¶ 100–101). Plaintiff's allegations, if true, show a breach of the confidentiality agreement during his employment with Plaintiff, regardless of whether Defendant Johnson's duty under that agreement lasted beyond the end of his employment. Defendant Johnson's motion to dismiss Count III is denied.

### D. Count IV: Breach of Duty of Loyalty and Fiduciary Duty

In Count IV, Plaintiff alleges that Defendant Johnson violated the duty of loyalty and fiduciary duty he owed to Plaintiff. (Doc. #1, ¶¶ 104–105). A duty of loyalty and a fiduciary duty are distinct legal concepts. "[E]very employee owes his or her employer a duty of loyalty." *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 479 (Mo. banc 2005) (citing *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 41 (Mo. banc 1966); Restatement (Second) of Agency § 387 (1958)). Conduct that breaches the duty of loyalty includes "using confidential information peculiar to the employer's business, soliciting customers before the end of the employment or other acts that result in direct competition." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 17 (Mo. 2012) (citing *Scanwell*, 162 S.W.3d at 479). In contrast, not every employee owes his or her employer a fiduciary duty. *Id.* at 16 (quoting *Walter E. Zemitzsch, Inc. v. Harrison*, 712 S.W.2d 418, (Mo. Ct. App. 1986)) (holding that "[g]enerally, 'an employer-employee relationship, without more, is insufficient to'" create a confidential relationship that establishes an employee's fiduciary duty).

It is still an open question "whether or to what extent an employee owes the employer a fiduciary duty separate from the duty of loyalty." *Id.* at 15 (citing *Scanwell*, 162 S.W.3d. at 479). "A confidential relationship between employer and employee giving rise to fiduciary duties exists if (1) there is an express understanding that the employee is receiving confidential information, or (2) the employee acquired the information in such a way that he must have known of its confidential nature." *Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc.*, 162 F.3d 991, 997 (8th Cir. 1998) (citing *Trieman*, 409 S.W.2d at 35–36). To prevail on a claim for breach of fiduciary duty, a plaintiff must prove "(1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm."

*Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009) (citing *Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 411 (Mo. Ct. App. 2000)). "Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide." *Western Blue*, 367 S.W.3d at 15 (citing *Scanwell*, 162 S.W.3d at 481). Defendant Johnson focuses mainly on the confidentiality agreement in the offer letter, but also argues that Plaintiff "cannot look to common law duties or trade secret law to block [Defendant] Johnson from doing what is expressly permitted after the contract terminates." (Doc. #28, p. 15). Plaintiff argues that, in addition to breaching Defendant Johnson's obligation under the confidentiality agreement in the offer letter, Defendant Johnson breached the duty of loyalty and fiduciary duty he owed to Plaintiff. (Doc. #33, p. 14).

Here, Plaintiff states a claim for breach of duty of loyalty and for breach of fiduciary duty. Plaintiff alleges that Defendant Johnson was its employee and Editorial Director of two of its magazines. (Doc. #1, ¶¶ 15-17, 104). Plaintiff's allegations about Defendant Johnson's conduct during his employment with Plaintiff, such as uploading the 11,000+ files to his own Dropbox account, are sufficient to show Defendant Johnson's "using confidential information peculiar to the employer's business," which constitutes a breach of the duty of loyalty Defendant Johnson owed Plaintiff during his employment with Plaintiff. (Doc. #1, ¶¶ 37). *See Western Blue*, 367 S.W.3d at 17. Plaintiff's allegations also suffice to show that Defendant Johnson owed Plaintiff a fiduciary duty and that Defendant Johnson breached this duty during his employment with Plaintiff. If true, Plaintiffs allegations about the offer letter and the nature of Defendant Johnson's work responsibilities show "an express understanding" between Plaintiff and Defendant Johnson "that the employee is receiving confidential information" giving rise to a fiduciary duty. (Doc. #1, ¶¶ 17, 21, 27). *See Pony Computer*, 162 F.3d at 997. As alleged,

Plaintiff's Complaint states a plausible claim that Defendant Johnson's conduct breached this fiduciary duty. (Doc. #1, ¶ 105).

### E. Count V: Declaratory Judgment

In Count V, Plaintiff "requests that the Court enter a judgment declaring [Plaintiff] to be the legal owner of the Twitter account @gregofbluebook f/k/a @gregofthepacker." (Doc. #1, ¶ 111). Under the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201–02, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Courts have "broad discretion" to issue declaratory judgments under § 2201. *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 882 (D. Minn. 2009) (citing *Alsager v. Dist. Court of Polk County,* 518 F.2d 1160, 1163 (8th Cir.1975)). When a court exercises this discretion, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *Marty H. Segelbaum*, 673 F. Supp. 2d at 882 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 57) (holding that plaintiff's claim for declaratory relief survived summary judgment even though that claim "encompass[ed]" plaintiff's separate breach of contract claim). "A successful action for declaratory judgment requires a viable underlying cause of action." *Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015) (internal citations and quotation marks omitted).

As the Court will discuss below, Plaintiff alleged that it owns the disputed Twitter account sufficiently enough for its substantive claims involving that account to survive dismissal. Therefore, "a viable underlying cause of action" supports Plaintiff's request for declaratory relief. *See id.* Moreover, in asking the Court to determine who owns the Twitter account, Plaintiff asks the Court to "declare the rights and other legal relations of" Plaintiff and Defendant

Johnson, not merely to make a factual finding. *See* § 2201. The Court denies Defendant Johnson's motion to dismiss Count V.

### F. Count VI: Conversion

#### i. Against Defendant Johnson

In Count VI, Plaintiff alleges that Defendants are liable for conversion because they "used and appropriated *The Packer* Twitter account to their own purposes by redirecting its Followers to Blue Book content, indicating they wrongfully claim a right in opposition to [Plaintiff's] right to the account." (Doc. #1, ¶ 115). Conversion is "the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Emerick v. Mut. Ben. Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. banc 1988) (citing *Maples v. United Savings and Loan Association,* 686 S.W.2d 525, 527 (Mo. Ct. App. 1985)). A plaintiff must sufficiently plead three elements to state a conversion claim: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 596 (Mo. Ct. App. 2000) (citing *Manzer v. Sanchez*, 985 S.W.2d 936, 940 (Mo. Ct. App. 1999)).[1] Defendant Johnson argues that Plaintiff fails to state a claim for conversion because,

---

[1] The parties dispute whether Kansas or Missouri law governs Plaintiff's conversion claim. Defendant Johnson points to Kansas law and argues it does not recognize a conversion claim for intangible property like Plaintiff's Twitter account. Plaintiff points to Missouri law and argues it does recognize such a claim. At this stage in the case, this Court does not need to perform a choice of law analysis. While neither Kansas nor Missouri courts have decided whether a social media account can be the subject of a conversion claim, no authority from either state requires this Court to dismiss Plaintiff's claim solely because the disputed property is a Twitter account. Neither state's conversion law draws a bright line between physical personal property and intangible personal property, recognizing conversion claims for the former and rejecting claims for the latter. Instead, their law suggests that whether disputed personal property can be subject to a conversion claim depends on whether the defendant's possession or use of the property—regardless of whether the property is physical or intangible—excludes the plaintiff's rights in that property. *See Near v. Crivello*, 673 F. Supp. 2d 1265, 1281 (D. Kan. 2009) (citations omitted) ("[U]nder Kansas law, intangible property rights may be subject to conversion, so long as there exists a present property interest."); *DIRECTV, Inc. v. Lockwood*, 311 F. Supp. 2d 1147, 1151 (D. Kan. 2004) (applying Kansas law and noting that "an action for conversion may lie when the subject is intangible personal property" but

aside from the nature of the disputed property, Plaintiff "does not allege ownership of" the Twitter account. (Doc. #28, pp. 9–10; Doc. #42, p. 12). Plaintiff argues that it alleges the Twitter account is its property and "details numerous facts that support" these allegations. (Doc. #33, p. 9) (citing Doc. #1, ¶¶ 110, 113, 119).

Here, assuming Plaintiff's factual allegations are true, Plaintiff states a conversion claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiff alleges that it owns the Twitter account and it is entitled to possess and control the account. (Doc. #1, ¶ 113). Plaintiff alleges both Defendants "have tortiously taken" the Twitter account and have used the account "to their own purposes." (Doc. #1, ¶ 114–115). Plaintiff alleges the Defendants have deprived Plaintiff of access to the Twitter account and "wrongfully claim a right in opposition to" Plaintiff's right to the account. (Doc. #1, ¶¶ 114–115). These allegations, together with those detailed above, state a plausible conversion claim against Defendant Johnson. Defendant Johnson's motion to dismiss Count VI is denied.

### ii. Against Defendant Blue Book

Defendant Blue Book argues that Plaintiff "pleads absolutely no facts supporting the allegation that [Defendant] Blue Book stole" the Twitter account and thus Plaintiff's conversion claim against Defendant Blue Book must fail. (Doc #29, p. 8). Plaintiff argues that its Complaint contains allegations that Defendant Blue Book has "tortiously taken" the Twitter account, "has used and appropriated the account to its own purposes," and has refused to give up possession of the account. (Doc. #32, pp. 12-13). Here, Plaintiff need not allege that Defendant

---

rejecting the plaintiff's claim that satellite signals were converted because the plaintiff did not "allege that Defendants used its property to Plaintiff's exclusion"); *Lucas v. Lucas*, 946 F.2d 1318, 1323–24 (8th Cir. 1991) (applying Missouri law; rejecting the defendant's argument that "an action for conversion is only appropriate where the converted property is chattel capable of being specifically identified"; and holding that "an estate's ownership interest in securities" could be converted). At bottom, each state's law suggests that intangible personal property such as a plaintiff's social media account may be the subject of a conversion claim if it can be used or appropriated in a way that excludes the plaintiff.

13

Blue Book "stole" the Twitter account in order to state a plausible conversion claim against Defendant Blue Book. *See Amwest Sur. Ins. Co. v. Concord Bank*, 248 F. Supp. 2d 867, 881–82 (E.D. Mo. 2003) (citing *Lucas*, 946, F.2d at 1323) (holding that a plaintiff can prove conversion by showing 1) "tortious taking," 2) "any use or appropriation to use of the person in possession indicating a claim of right in opposition to the rights of the owner," or 3) "refusal to give up possession to the owner on demand"). In light of the allegations discussed above, Plaintiff has stated a plausible conversion claim against Defendant Blue Book. Defendant Blue Book's motion to dismiss Count VI is denied.

### G. Count VII: Replevin

#### i. Against Defendant Johnson

In Count VII, Plaintiff brings a replevin claim, "seek[ing] an order from the Court directing Defendants to cease all use of @gregofbluebook f/k/a @gregofthepacker Twitter account and ordering them to turn over to [Plaintiff] access to the account." (Doc. #1, ¶ 122). "An action in replevin is designed to get the property of one person from another." *Vahey v. Vahey*, 120 S.W.3d 288, 291 (Mo. Ct. App. 2003) (citing Mo. Rev. Stat. § 533.010). "The gist of a replevin action is to test plaintiff's right to immediate possession." *Roberts Holdings, Inc. v. Becca's Barkery, Inc.*, 423 S.W.3d 920, 928 (Mo. Ct. App. 2014) (internal quotation marks omitted) (quoting *Phillips v. Ockel,* 609 S.W.2d 228, 231 (Mo. Ct. App. 1980)). "The plaintiff in a replevin action must plead and prove an immediate right to possession." *Turman v. Schneider Bailey, Inc.*, 768 S.W.2d 108, 112 (Mo. Ct. App. 1988) (citing *Olson v. Penrod,* 493 S.W.2d 673, 675–76 (Mo. Ct. App. 1973)).

Defendant Johnson argues[2] that "the replevin count fails at the outset because it does not allege that [Defendant Johnson] is wrongfully detaining the account." (Doc. #29, p. 9). Plaintiff argues that "the word 'detain' is not an essential word that [Plaintiff] was obligated to insert in its Complaint or else face dismissal" and that Defendant Blue Book "is exalting form over substance." (Doc. #32, pp. 15-16). For the same reasons that Plaintiff states a plausible conversion claim, Plaintiff sufficiently pleads that Defendant Johnson is wrongfully detaining the account. (Doc. #1, ¶¶ 119–121). Plaintiff states a replevin claim against Defendant Johnson, whose motion to dismiss Count VII is therefore denied.

### ii. Against Defendant Blue Book

The Court has already discussed Defendant Blue Book's arguments against Plaintiff's replevin claim and Plaintiff's response to that argument. Plaintiff sufficiently pleads that Defendants, including Blue Book, have tortiously taken the Twitter account that allegedly belongs to Plaintiff. (Doc. #1, ¶¶ 119–121). Plaintiff pleads that Defendants, including Blue Book, "have used and appropariated" the Twitter account "to their own purposes" and that they "wrongfully claim a right in opposition to" Plaintiff's right in the account. (Doc. #1, ¶¶ 120–121). Plaintiff states a valid claim for replevin against Defendant Blue Book. Defendant Blue Book's motion to dismiss Count VII is denied.

### H. Count VIII: Unfair Competition

### i. Against Defendant Johnson

In Count VIII, Plaintiff alleges that Defendants' conduct in uploading Plaintiff's files to Defendant Johnson's Dropbox and using the Twitter account constitutes unfair competition.

---

[2] In Defendant Johnson's supporting suggestions, he "incorporates" arguments that Defendant Blue Book asserted in its supporting suggestions regarding Plaintiff's conversion, replevin, and civil conspiracy claims. (Doc. #28 , p. 10 n.2). Therefore, the Court cites to Defendant Blue Book's opposing suggestions when discussing Defendant Johnson's arguments regarding Plaintiff's replevin action.

15

(Doc. #1, ¶¶ 124–125). "[U]nfair competition consists of passing off the business of one as the business of another." *Design Nine, Inc. v. Arch Rail Grp., LLC*, No. 4:18 CV 428 CDP, 2019 WL 1326677, at *9 (E.D. Mo. Mar. 25, 2019) (citing *Cushman v. Mutton Hollow Land Dev., Inc.*, 782 S.W.2d 150, 157 (Mo. Ct. App. 1990))." "While the law of unfair competition does not contain specific elements, it can be best described as a reaffirmation of the rules of fair play by prohibiting attempts to trade on another's reputation." *Id.* at *9 (citing *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 26, 19–20 (Mo. 1972)). "A claimant may assert an unfair competition claim based on broad improper conduct, like 'deceptive marketing, infringement of trademarks and other indicia of identification, and appropriation of intangible trade values, such as trade secrets.'" *InfoDeli, LLC v. W. Robidoux, Inc.*, No. 4:15-CV-00364-BCW, 2016 WL 6921624, at *5 (W.D. Mo. Aug. 26, 2016) (quoting *Am. Equity Mtg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012)). Defendant Johnson argues that "the termination of the confidentiality obligation" in the offer letter defeats Plaintiff's unfair competition claim, which, Defendant Johnson argues, is "premised on confidentiality." (Doc. #42, p. 9). Plaintiff argues that Plaintiff's confidentiality obligation did not terminate and that Plaintiff has "adequately pled" its unfair competition claim. (Doc. #33, pp. 8, 17).

Here, Plaintiff states a claim for unfair competition. Plaintiff alleges Defendant Johnson "has competed unfairly with [Plaintiff] by copying confidential information from its internal computer network, without authorization, to a DropBox account that is not controlled by or accessible to" Plaintiff and this copying happened while Defendants "Johnsons and Blue Book were negotiating" Defendant Johnson's future employment. (Doc. #1, ¶ 124). Plaintiff further alleges both Defendants "competed unfairly through their continued, unauthorized use of" the Twitter account "to divert [Plaintiff's] followers to Blue Book content and by causing confusion

16

regarding the existence of an association which does not exist between Blue Book and Farm Journal content that remains posted or linked in Tweets under the new @gregofbluebook handle." (Doc. #1, ¶ 125). These allegations are sufficient to show the "broad improper conduct" that forms the basis of an unfair competition claim. *See Vinson*, 371 S.W.3d at 64. Defendant Johnson's motion to dismiss Count VIII is denied.

### ii. Against Defendant Blue Book

Plaintiff states an unfair competition claim against Defendant Blue Book. Plaintiff alleges Defendant Blue Book "condoned and acquiesced in all of [Defendant] Johnson's actions and has failed and refused to instruct [Defendant] Johnson to return [Plaintiff's] confidential information. (Doc. #1, ¶ 124). As discussed above, Plaintiff also alleges Defendant Blue Book, together with Defendant Johnson, "competed unfairly through their continued, unauthorized use of" the Twitter account. (Doc. #1, ¶ 125). These allegations are sufficient to state a plausible unfair competition claim against Defendant Blue Book. The Court denies Defendant Blue Book's motion to dismiss Count VIII.

### I. Count IX: Civil Conspiracy

### i. Against Defendant Johnson

In Count IX, Plaintiff alleges that Defendants' conduct amounts to civil conspiracy because "[t]here was a meeting of the minds" between the Defendants to, among other things, "convert *The Packer* Twitter account so as to divert [Plaintiff's] followers to Blue Book content and thereby tortiously interfere with [Plaintiff's] prospective business advantage, expectancy and relationships." (Doc. #1, ¶ 129). "A claim of civil conspiracy requires a showing of: (1) two or more persons; (2) an unlawful purpose; (3) a meeting of the minds; (4) at least one act conducted in furtherance of the conspiracy; and (5) damages." *Design Nine*, 2019 WL 1326677, at *10

(citing *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. banc 1999)). "Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *Western Blue*, 367 S.W.3d at 22 (citing *Breeden v. Hueser,* 273 S.W.3d 1, 13 (Mo. Ct. App. 2008)). "[I]f tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.* (internal quotation marks omitted) (quoting *Oak Bluff*, 3 S.W.3d at 781). Defendant Johnson argues, in addition to Plaintiff's failure to state an underlying tort claim, the intracorporate conspiracy doctrine bars Plaintiff's civil conspiracy claim because the alleged wrongdoing happened within the scope of Defendant Johnson's employment with Defendant Blue Book. (Doc. #28, p. 12). Plaintiff argues it states underlying tort claims. (Doc. #28, p. 12). Plaintiff further argues the intracorporate conspiracy doctrine does not bar its civil conspiracy claim because it is "inappropriate" to apply the doctrine at the dismissal stage and Defendant Johnson "had an independent personal stake" in achieving the object of the conspiracy. (Doc. #33, pp. 12–13).

Here, Plaintiff states a civil conspiracy claim against Defendant Johnson. First, as already discussed, Plaintiff states several other plausible claims for relief that form the basis of its civil conspiracy claim. Second, Plaintiff sufficiently pleads the elements of civil conspiracy. Plaintiff alleges Defendants Johnson and Blue Book formed "a meeting of the minds" to convert Plaintiff's Twitter account "so as to divert [Plaintiff's] followers to Blue Book content and thereby tortiously interfere with [Plaintiff's] prospective business advantage, expectancy and relationships." (Doc. #1, ¶ 129). If assumed true, these allegations and others already discussed show several acts by each Defendant in furtherance of the alleged conspiracy. (*See, e.g.*, Doc. #1, ¶¶ 2, 3, 4, 32, 37, 47–50, 56, 65, 69, 71, 114, 129–130). Moreover, the Court need not decide whether the intracorporate conspiracy doctrine—or any exception to it—applies because several

alleged events giving rise to Plaintiff's claim happened before Defendant Johnson became Defendant Blue Book's employee. Defendant Johnson's motion to dismiss Count IX is therefore denied.

### ii. Against Defendant Blue Book

Defendant Blue Book argues Plaintiff's civil conspiracy claim should be dismissed because Plaintiff "does not allege any overt act by [Defendant] Blue Book relating to the Twitter conspiracy"; Plaintiff "does not properly allege a 'meeting of the minds'"; the intracorporate conspiracy doctrine bars Plaintiff's claim; and Plaintiff has not stated an underlying tort claim. (Doc. #29, pp. 3–5). Plaintiff argues that, while it does not need to allege that Defendant Blue Book itself committed the overt act in furtherance of the conspiracy, Defendant Blue book committed several such acts. (Doc. #32, pp. 7–8). Plaintiff further argues it has sufficiently pleaded a meeting of the minds between the Defendants, the intracorporate conspiracy doctrine does not bar its claim, and it states several underlying tort claims. (Doc. #32, pp. 9–12). Here, Plaintiff states a viable civil conspiracy claim against Defendant Blue Book for the same reasons Plaintiff states such a claim against Defendant Johnson. Defendant Blue Book's motion to dismiss Count IX is denied.

## IV. Conclusion

Accordingly, Defendant Gregory Johnson's Motion to Dismiss (Doc. #26) and Defendant Blue Book Services, Inc. d/b/a Produce Blue Book's Motion to Dismiss (Doc. #27) are denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>April 24, 2019</u>